NOT DESIGNATED FOR PUBLICATION

No. 116,497

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JAMES SCOTT LOMON,
*Appellee*.


MEMORANDUM OPINION

Appeal from Morris District Court; MARGARET F. WHITE, judge. Opinion filed April 28, 2017. Affirmed.

*Laura E. Allen*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before SCHROEDER, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*:  In April 2014, the State charged James Scott Lomon with burglary and criminal damage to property. At that time, Lomon was in Kansas Department of Corrections (KDOC) custody at Hutchinson Correctional Facility (HCF). After receiving notice, Lomon submitted a written request with HCF officials for final disposition of the pending charges. Ultimately, HCF officials did not send the request to the county attorney and the district court where the charges were pending. The State subsequently took no action to prosecute Lomon's case, and, on June 23, 2016, Lomon filed a pro se motion to dismiss pursuant to the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 *et seq*. After an evidentiary hearing, the district court granted

1

Lomon's motion and dismissed the charges against him. The State now appeals, contending Lomon failed to comply with the UMDDA and, thus, was not entitled to dismissal of the charges.

FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2014, the State filed burglary and criminal damage charges against Lomon in Morris County District Court. At that time, Lomon was in KDOC custody at HCF. Lomon became aware of the pending charges and submitted a written request to file a 180-day writ with his Unit Team at HCF. HCF officials did not send Lomon's request to the Morris County Attorney or district court.

When HCF authorities did not forward his request, Lomon filed a grievance with HCF's warden. Lomon's grievance stated that he was dissatisfied with his Unit Team's response to his request to file a 180-day writ. On June 25, 2014, HCF's warden responded, stating he received the Team Unit's response and concurred. The warden further stated that "[t]he KDOC does not pay the fees required to file a 180 day writ. A review of your account shows that you have $47.80 on your books and are capable of paying for the associated fees of the 180 day writ."

On July 20, 2014, Lomon mailed a handwritten 180-day writ to the Morris County Attorney. In the writ, Lomon sought "disposition of detainer" in Morris County. The writ stated that Lomon was unaware of the specific case number associated with the charges against him.

On January 10, 2015, Lomon submitted an inmate request, asking "what is required . . . to file a 180 day writ on detainers." In the request, Lomon also asked whether he could personally file a 180-day writ and stated he had four detainers in four

2

different counties. On January 14, 2015, HCF advised Lomon that he needed to send "2 SPC's per case."

The State subsequently took no action to prosecute Lomon's case. On June 23, 2016, Lomon filed a pro se motion to dismiss pursuant to the UMDDA. In the handwritten motion, Lomon alleged that "he made a request in writing to officials having custody of him for final disposition of all warrants and complaints pending against him." According to Lomon's motion, prison officials informed Lomon that he lacked sufficient funds to pay the associated filing fees and refused to forward his request. Based on the prison officials' failure to send the request, Lomon requested that the district court dismiss all charges against him with prejudice.

The district court held a first appearance hearing on July 21, 2016. After that hearing, the district court requested the appointment of a public defender.

On August 17, 2016, the district court held a hearing on Lomon's motion to dismiss. At the hearing, Lomon testified that, after he became aware of the pending charges in Morris County, he "presented to the authorities [at HCF], as [he was] supposed to, with a written request to file a writ on the case." Lomon clarified that he provided the written request to the Unit Team. According to Lomon, the Unit Team did not forward his written request for a writ of detainer to the Morris County District Court or the Morris County Attorney because he lacked enough money to pay the associated filing fees.

Lomon stated that he sent the handwritten 180-day writ to the Morris County Attorney because HCF officials failed to forward his detainer request and he "assumed it was the only way [he] was going to get to the courthouse." Lomon explained that he had filled out an identical form and sent it to the courthouse in Douglas County and the court responded to it and brought him to court. Lomon further stated that he did not have the money to file it "correctly through the facility, so [he] just figured this would work."

3

Lomon admitted that he did not send a copy of the handwritten 180-day writ to the Morris County District Court.

After Lomon testified, the parties offered their closing arguments. Lomon contended that more than 180 days had lapsed and, in turn, the district court did not have jurisdiction to entertain the State's charges. Lomon conceded that he did not send the 180-day writ to the district court and did not send it by certified mail. However, citing *State v. Burnett*, 297 Kan. 447, 301 P.3d 698 (2013), Lomon argued that KDOC had the burden to send the detainer information and it was inappropriate to hold KDOC's failure against him. Lomon concluded that, as in *Burnett*, he substantially complied with the writ procedures "as best he could given the circumstances" and any failures were attributable to KDOC.

In response, the State argued that Lomon's motion assumed that his failure to comply with the UMDDA was KDOC's fault. The State requested that the district court deny Lomon's motion for lack of compliance. In reply, Lomon emphasized *Burnett*'s holding that KDOC's failure should not be held against him.

After hearing the parties' closing arguments, the district court took a recess to read *Burnett* and make a determination. Ultimately, the district magistrate judge granted Lomon's motion and dismissed the State's charges:

> "THE COURT:  Okay. Well, I've read the case too. And it is somewhat—this whole thing is troubling, because I look at the detainer, the detainer is dated January 13th, 2015. I go back and I look, and it looks to me like there was—wait, was that 2014? Yeah, there was one filed two thousand—what did I say? 2015? Yeah, that's—if I didn't, that's what I meant. There—but it—it—it wasn't—we didn't receive it back until June 23rd of 2016. That's what really bothers me.
> "The other thing is, is that it looks like Mr. Lomon was asking about what was required to file [a] 180-day writ on detainers. I'm looking at that. That's what was

4

attached to his request, to his writ. That was dated on January 10th of 2015. Their response was not until June—well, June 25th of 2014, it appears there was—if I'm getting my dates right now, that there was a response made for something. I don't know whose writ it was. I don't know if it was for all the writs.

"I'm looking to see, when was this complaint filed? It was filed—okay it was filed in April of 2015—or '14. So this information where he's talking about—or where there is apparently a decision made at the [HCF] was on June 25th of 2014. It appears to me they're basing everything on money. And while I understand it's not a constitutional right, it's a statutory right for them to have—to be brought to trial within 180 days.

"There is no—I don't see that there's any fault on [Lomon's] part. I'm looking at what the [KDOC] did. I don't know if they're a bunch of knuckleheads there or what. But it appears to me that there—that they had the information, based upon what I'm reading. Yes, there are assumptions to be made. Mr. Lomon did state what he did may have been not only for this case but for other cases. Don't know what's happened in the other cases. I know what you said happened in Saline County, I think it was—I don't remember which county. But I'm going to have to grant his writ because I just don't feel—I feel like the problem is with the Department of Corrections."

The State timely appealed.

DID THE DISTRICT COURT ERR IN GRANTING LOMON'S MOTION TO DISMISS?

On appeal, the State contends that the district court erred in finding Lomon complied with the UMDDA and that, in turn, Lomon was not entitled to dismissal of the charges against him. An appellate court has unlimited review when determining whether a defendant's statutory right to speedy trial was violated. Further, statutory interpretation and determination of jurisdiction involve questions of law over which an appellate court has unlimited review. *Burnett*, 297 Kan. at 451.

The UMDDA, K.S.A. 22-4301 *et seq.*, provides the procedure for Kansas prisoners to request final disposition of other pending charges within the state. "Once the prisoner properly initiates disposition of other pending charges under the UMDDA, the

State's failure to bring those charges to trial within 180 days deprives the district court of jurisdiction." *Burnett*, 297 Kan. at 448.

K.S.A. 2014 Supp. 22-4301(a) outlines the manner in which a Kansas prisoner must request final disposition of pending charges:

"Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing addressed to the court in which the indictment, information, motion to revoke probation or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment."

Thus, to invoke the UMDDA, a prisoner must submit a written request for final disposition of any pending charges "to the warden, superintendent or other officials having custody of the prisoner." K.S.A. 22-4302; see *Burnett*, 297 Kan. at 454. The request must be addressed to the court and county attorney where the charges are pending and state the prisoner's "place of imprisonment." K.S.A. 2014 Supp. 22-4301(a). "[S]ubstantial compliance with the UMDDA is sufficient to invoke its protections." *Burnett*, 297 Kan. at 453.

Once a prisoner has properly invoked the UMDDA, the burden to send the request and a certification of the prisoner's term of commitment shifts to the prison officials. 297 Kan. at 454. "'[T]he warden, superintendent or other officials having custody of the prisoner' are obligated to 'forthwith' send the district court and county attorney the request and certification." 297 Kan. at 454-55. The Kansas Supreme Court has recognized that, if prison officials deficiently execute their statutory responsibilities, their failures are not attributable to the prisoner and do not prejudice the prisoner's ability to invoke the UMDDA. 297 Kan. at 455.

6

In *Burnett*, a prisoner was charged in Reno County on September 7, 2006. Soon thereafter, the prisoner began serving a prison sentence in an unrelated case in McPherson County. On February 7, 2007, the prisoner filed a request for final disposition with the Reno County District Court, requesting a resolution within 180 days of all pending charges against him in Reno County. The prisoner also sent a copy of his request to the Reno County District Attorney, the Reno County District Court clerk, and the Kansas Secretary of Corrections. As provided in the UMDDA, the KDOC should have sent a copy of the prisoner's request along with a certificate attesting to the prisoner's term of commitment to the Reno County District Court and to the Reno County District Attorney. See K.S.A. 22-4302. Yet, the prisoner was physically delivered to Reno County authorities to face the charges against him. Sometime after his preliminary hearing, the prisoner filed a motion to dismiss because he had not been brought to trial within 180 days. The district court denied the motion, and this court affirmed.

On review, the Kansas Supreme Court reversed. 297 Kan. at 457-59. Among other issues, the court analyzed whether the prisoner had to prove when the district attorney received his request and certification. 297 Kan. at 454-55. The Kansas Supreme Court stated that the undisputed evidence showed the prisoner filed his request with the district court on February 7, 2007. The court explained that, if prison officials failed to properly execute its statutory responsibilities, their failures were not attributable to the prisoner. And the prisoner could not be deprived of his statutory rights under the UMDDA "'by the laches of public officials' [Citations omitted.]" 297 Kan. at 455. The court ultimately concluded that 180 days lapsed since the prisoner filed his request with the district court on February 7, 2007; therefore, the Reno County District Court lacked jurisdiction to hold a jury trial and erred in denying the prisoner's motion to dismiss. 297 Kan. at 459.

In this case, it is clear that Lomon was not in full compliance with the UMDDA. He filed a notice with officials at the prison where he was located but it was not addressed to the county attorney or the district court where the charges Lomon wanted

7

addressed were filed. Apparently, the prison officials took no action on the request made by Lomon. However, when Lomon inquired why no action had been taken on his request, he was not told that his filing was inadequate. He was told that the filing was not being processed because Lomon was responsible for paying fees as a precursor to the processing of the request.

The problem with this response is that there is no statutory authority in the UMDDA requiring the payment of any fee to pursue a 180-day writ. Furthermore, there is no reference made in the written response from the prison officials to any authority Lomon could refer to in order to address the problem as outlined by the prison officials. Lomon made a subsequent inquiry on how to proceed and was given information that did not answer the inquiry. This led to apparent confusion on Lomon's part on how to proceed in that he felt the only way to move forward was to contact Morris County directly. There is some logic in Lomon's perception in that he had contacted Douglas County directly in regard to a 180-day writ and received a response.

Lomon took specific steps in an attempt to pursue a 180-day writ in Morris County. While prison officials have an affirmative duty to pass a 180-day writ request to the necessary parties, the State argues that the UMDDA was not properly invoked and therefore the duty to act never manifested itself. However, there is certainly an obligation to provide a prisoner with accurate information when it is decided that prison officials do not feel there is an obligation to act and in all events not create a barrier to a prisoner pursuing his legal options. In this case, Lomon took action to attempt to pursue a 180-day writ and was misled on how to pursue that legal right. When he perceived that prison officials were not going to take action, he took unilateral action to pursue his right. In this case, Lomon took sufficient action to purse his right to a180-day writ and the State impeded those efforts. Consistent with the reasoning in *Burnett,* Lomon's efforts should not be burdened with the State's actions. Lomon took sufficient steps to invoke the UMDDA.

In reading the record on appeal, the only clear starting date for the UMDDA's 180-day period was July 20, 2014, when Lomon mailed the handwritten 180-day writ to the Morris County Attorney. The record indicates that Lomon's request to the Unit Team at HCF occurred sometime before Lomon submitted the handwritten writ, but no evidence suggests an exact date. In any event, the State did not prosecute Lomon's case until Lomon filed his pro se motion to dismiss on June 23, 2016, nearly 2 years after he mailed the handwritten writ. Indeed, the district court did not hold a first appearance hearing until July 21, 2016.

Because the State otherwise asserts no statutory exemption, the passage of the 180-day statutory period is conclusive of undue delay. See K.S.A. 2014 Supp. 22-4303; *Burnett*, 297 Kan. at 459. Since Lomon properly invoked the UMDDA, the district court lacked jurisdiction and, therefore, correctly granted Lomon's motion to dismiss.

Affirmed.